UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

CHEFS' WAREHOUSE MIDWEST, LLC, : Case No. 1:17-cv-555
:
    Plaintiff, : Judge Timothy S. Black
vs. :
:
CSX TRANSPORTATION, INC., :
:
    Defendant. :

**ORDER DENYING PLAINTIFF'S MOTION
FOR TEMPORARY RESTRAINING ORDER (Doc. 3)**

This case is before the Court on Plaintiff's motion for a temporary restraining order (Doc. 3) and the parties' responsive memoranda (Docs. 9, 10, 13).

### I. FACTS <u>AS ALLEGED</u> BY PLAINTIFF

**A. Background.**

Plaintiff owns property at 619 Linn St., Cincinnati, OH, comprised of Hamilton County Parcel Identification Numbers 138-4-322, 138-5-138, 138-5-206, 138-5-240, 138-5-254, 138-5-262, 138-5-263, 138-5-264, and 138-5-266 (collectively, the "Chefs' Warehouse Site"). (Doc. 2 at ¶ 5).

Plaintiff operates a food distribution business at the Chefs' Warehouse Site. (Doc. 2. at ¶ 8). Plaintiff and its predecessors-in-title have occupied and been title owners of the Chefs' Warehouse Site for at least forty years. (*Id.* at ¶ 13). Throughout this time, Plaintiff and its predecessors-in-title have utilized an exit to the stub end of West Sixth Street across property over which Defendant claims ownership. (*Id.* at ¶ 14).

Defendant owns Hamilton County Parcel Identification Number 138-5-208 (the "CSX Parcel"). (Doc. 2 at ¶ 17).

The Chefs' Warehouse Site has two access points to public streets: the first is on the northwest end of the Site on Dalton Avenue ("Dalton Avenue Exit"), and the second is on the southeast end of the Site just north of the stub of West Sixth Street ("West Sixth Street Exit"). (*Id.* at ¶ 18). The southeast vehicular access utilized by Plaintiff for egress extends from the Chefs' Warehouse Site, crosses a small but critical portion of the CSX Parcel, and proceeds on a portion of right of way that is a stub to West Sixth Street. (*Id.* at ¶ 19). The West Sixth Street Exit is approximately 767 square feet in area. (*Id.* at ¶ 22).

Plaintiff (or its predecessors-in-title) has been in open, continuous, adverse, notorious and actual use of the West Sixth Street Exit to, among other things, provide daily egress access from the Chefs' Warehouse Site by its employees, customers, vendors, distributors, delivery trucks, and any other vehicles or individuals accessing the Chefs' Warehouse Site. (Doc. 2 at ¶ 23). Plaintiff's use of the West Sixth Street Exit has been adverse to any right, title and interest of Defendant. (*Id.* at ¶ 23). Hundreds of vehicles per day use the West Sixth Street Exit and have done so for at least the past forty years. (Doc. 2 at ¶ 25). Plaintiff's use has been "open and notorious" because the West Sixth Street Exit contains signage and asphalt markings. (*Id.* at ¶ 29; *Id.* at 30-31).

**B. Facts giving rise to this dispute.**

On July 14, 2017, Defendant wrote a letter to Plaintiff, claiming that a tractor trailer using the West Sixth Street Exit damaged Defendant's signal cable ("Signal

Cable").[1] (Doc. 2 at 33). Defendant demanded that Plaintiff immediately stop using the West Sixth Street Exit:

> In connection with railroad property at or near 619 Linn St., CSXT has sited that several unauthorized tractor trailers are currently using CSXT property for ingress/egress to the property located at 619 Linn St. CSXT has **never authorized** the use of this property. CSXT has experienced issues with a cable being knocked down at this location due to the unauthorized use of CSXT property. Enclosed for reference is an aerial map detailing your unauthorized access to, and use of, the Property. CSXT hereby demands that you immediately stop use of the property. CSXT expressly reserves all legal, equitable, and statutory rights and remedies with respect to your trespass and unauthorized use of the Property and any harm resulting therefrom, including any and all applicable civil remedies and criminal penalties.

(*Id.*) (emphasis in original).

On or about July 24, 2017, Defendant barricaded the West Sixth Street Exit, preventing vehicles attempting to access the Chefs' Warehouse Site from using the exit. (Doc. 2 at 33).

### C. Plaintiff's alleged harm.

The building at the Chefs' Warehouse Site is "L-Shaped," a portion of which extends under the West Sixth Street overpass. (Doc. 2 at ¶ 35). There are loading docks accessing the structure at the Chefs' Warehouse Site on the west edge, across almost the entire length of the south end of the building, and on the east edge of the structure facing Linn Street, closest to the West Sixth Street Exit. (*Id.* at ¶ 36). The eastern end of the building houses the freezer portion of Plaintiff's operation. (*Id.* at ¶ 37). Plaintiff relies

---

[1] <u>Defendant's Signal Cable transmits information</u> concerning track occupancy, switch position and signal indication to wayside signals authorizing train moves, and <u>to remote dispatch centers to coordinate and plan train movements</u>. (Doc. 1-4 at ¶ 19).

on the use and availability of all loading docks at the Chefs' Warehouse Site to perform its business. (*Id.* at ¶ 38).

The blockading of the West Sixth Street Exit by Defendant has greatly reduced accessibility to the Chefs' Warehouse Site. (Doc. 2 at ¶ 40). Trucks coming to and leaving the Chefs' Warehouse Site have an extremely difficult time turning around on the southeast portion of the site to exit on Dalton Avenue rather than utilize the West Sixth Street Exit. (*Id.* at ¶ 41). For larger vehicles, such maneuvers are unsafe and/or impossible. (*Id.*)

Plaintiff's vendors have indicated that reduced access to the Site as a result of Defendant's blockade is a safety hazard to their drivers which may result in their refusal to deliver to the Chefs' Warehouse Site without additional warning. (*Id.* at ¶¶ 42-43).

The evidence Plaintiff submitted in support of this allegation is the affidavit of Casey Corbly, Assistant Transportation Manager of Dot Foods, Inc. ("Dot Foods"). (Doc. 11-1). Corbly states that Dot Foods is the nation's largest food redistributor and has been a customer of Chefs' Warehouse and its predecessors for over fifteen years. (*Id.* at ¶¶ 4-5). Corbly asserts that, in late July 2017, Corbly became aware that the West Sixth Street Exit had been obstructed, making it impossible for Dot Foods' tractor trailers to navigate safely. (*Id.* at ¶ 7). Corbly states Dot Foods "reached a workaround" in order to continue servicing the Chefs' Warehouse Site, though the workaround is "not ideal" and their drivers are still required to make "risky maneuvers." (*Id.* at ¶ 11). Dot Foods does not believe the workaround to be "a long-term solution," and is "constantly

reevaluating the situation" and "may refuse service at any time if our driver is not confident in the safety of himself and his equipment." (*Id.* at ¶¶ 13-14).

Due to the blockading of the West Sixth Street Exit, Plaintiff's temperature controlled cold dock is inaccessible to many delivery trucks. (Doc. 2 at ¶ 44). As a result, Plaintiff has had to temporarily reconfigure its operations to accommodate trucks exiting the Site from only the northwest side, including the rapid movement of refrigerated product through non-refrigerated portions of the building to the refrigerated portion of the warehouse. (*Id.*) The operational adjustment decreases worker productivity and places large quantities of product at risk on a daily basis. (*Id.*). The inability of vehicles to exit the Chefs' Warehouse Site via the West Sixth Street Exit is causing substantial damage to Plaintiff's business and operations. (*Id.* at ¶ 45).

## II. STANDARD OF REVIEW

Plaintiff bears the heavy burden of demonstrating his entitlement to a temporary restraining order. An "injunction is an **extraordinary remedy** which should be granted only if the movant carries his or her burden of proving that the circumstances <u>clearly</u> demand it." *Overstreet v. Lexington-Fayette Urban County Gov't,* 305 F.3d 566, 573 (6th Cir. 2002) (emphasis added).

In determining whether to grant injunctive relief, this Court must weigh four factors: (1) whether the moving party has shown a strong likelihood of success on the merits; (2) whether the moving party will suffer irreparable harm if the injunction is not issued; (3) whether the issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuing the injunction. *Id.*

5

These four considerations are factors to be balanced, not prerequisites that must be met. *McPherson v. Michigan High Sch. Athletic Ass'n, Inc.*, 119 F.3d 453, 459 (6th Cir. 1997). "Although no one factor is controlling, a finding that there is simply no likelihood of success on the merits is usually fatal." *Gonzales v. Nat'l Bd. of Med. Exam'rs,* 225 F.3d 620, 625 (6th Cir. 2000).

### III.    ANALYSIS

**A.  Plaintiff has <u>not</u> shown a strong likelihood of success on the merits.**

Plaintiff argues that it has met the elements of a prescriptive easement, *i.e.*, that its use of the West Sixth Street Exit has been open, notorious, adverse, hostile and continuous for more than 21 years.  (Doc. 3 at 7-9).   However, Defendant has presented substantial evidence and case law that Plaintiff's claim for a prescriptive easement is preempted by the Interstate Commerce Commission Termination Act ("ICCTA").  Under these circumstances, the Court cannot conclude that Plaintiff has a "strong likelihood" of success on the merits.

The ICCTA grants the Surface Transportation Board ("Board") <u>exclusive</u> jurisdiction over, *inter alia*, "transportation by rail carriers" and "the construction, acquisition, operation, abandonment, or discontinuance of spur, industrial, team, switching, or side tracks, or facilities, even if the tracks are located, or intended to be located, entirely in one State[.]"  49 U.S.C. § 10501(b).  The remedies provided in the ICCTA in regards to the aforementioned preempt the remedies provided under Federal or State law.  *Id*.  "Transportation" is defined as including, *inter alia*, all of the facilities,

6

equipment, property, and instruments related to the movement of property by rail, regardless of ownership. 49 U.S.C. § 10102(9).

The ICCTA facially preempts two types of actions: (1) any form of state or local permitting or preclearance that, by its nature, could be used to deny a railroad the ability to conduct some part of its operations or to proceed with activities that the Board has authorized, and (2) state or local regulation of matters directly regulated by the Board. *CSX Transportation, Inc.*, Petition for Declaratory Order, Fin. Dkt. 34662, 2005 STB Lexis 675, at * 5 (May 3, 2005).

For actions that are not facially preempted, the § 10501(b) preemption analysis requires a factual assessment of whether that action would have the effect of preventing or "unreasonably interfering" with railroad transportation. *Id.* at * 9; *Franks Inv. Co. LLC v. Union Pac. R.R. Co.*, 593 F.3d 404, 414 (5th Cir. 2010) ("state law actions can be preempted as applied if they have the effect of unreasonably burdening or interfering with rail transportation."); *City of Ozark v. Union Pac. R.R. Co.*, 843 F.3d 1167, 1171 (8th Cir.).

While claims for adverse possession may be facially preempted,[2] claims for <u>non-exclusive</u> use of railroad property are typically analyzed under the "as applied" framework and preempted if they unreasonably interfere with railroad transportation. *See Maumee & Western Railroad Corp. and RMW Ventures, LLC*, Petition for Declaratory Order, Fin. Dkt. No. 34354, STB LEXIS 140, at * 5 (S.T.B. Mar. 2, 2004) ("routine, non-

---

[2] *See 14500 Ltd. v. CSX Transp., Inc.*, No. 1:12-cv-1810, 2013 U.S. Dist. LEXIS 39806, at * 5-13 (N.D. Ohio Mar. 14, 2013).

conflicting uses, such as non-exclusive easements for at-grade road crossings, wire crossings, sewer crossings, etc., are not preempted so long as they would not impede rail operations or pose undue safety risks.").

The question of whether a state law claim would "unreasonably interfere" with railroad transportation requires a fact-specific determination. *Franks Inv. Co.*, 593 F.3d at 414, n. 2. Accordingly:

> when a state or federal court determines that the railroad has made no showing that a remedy allowing use of a particular crossing would unreasonably interfere with rail transportation, then the court may proceed to resolve the crossing dispute applying relevant state law contract, property, or condemnation principles. [citation omitted]. However, if the court concludes that a proposed crossing easement would unreasonably interfere, then §10501(b) grants the STB exclusive jurisdiction and the lawsuit or condemnation proceeding must be dismissed or enjoined for lack of jurisdiction.

*City of Ozark*, 843 F.3d at 1171.

In this case, Plaintiff seeks a "non-exclusive easement by prescription for access to and from the Chefs' Warehouse Site on and over" the West Sixth Street Exit. (Doc. 2 at 9). <u>Plaintiff's claim for a non-exclusive easement under Ohio law is preempted if it would "unreasonably interfere" with railroad transportation</u>. *CSX Transportation, Inc.*, 2005 STB Lexis 675, at * 9; *Franks Inv. Co.*, 593 F.3d at 414; *City of Ozark*, 843 F.3d at 1171.

Defendant argues Plaintiff's use of the West Sixth Street Exit interferes with railroad transportation in two ways. First, Defendant has presented evidence that tractor trailers using the West Sixth Street Exit routinely come within four feet of the railroad track and impermissibly "foul" the track as that term is defined in the applicable federal

8

regulations. (Doc. 9-1 at ¶¶ 5-11; Doc. 9-2); 49 C.F.R. § 214.7 ("*Fouling a track* means the placement of an individual or an item of equipment in such proximity to a track that the individual or equipment could be struck by a moving train or on-track equipment, or in any case is within four feet of the field side of the near running rail."); 49 C.F.R. § 214.313(b) (railroad workers may not foul a track "except when necessary for the performance of a duty.").

Second, Defendant has presented evidence that its Signal Cable was damaged by a tractor trailer exiting the West Sixth Street Exit on four occasions. (Doc. 9-3 at ¶¶ 9-13).[3] Defendant argues that if the Signal Cable is cut or severed, it could "cause the switch to stop functioning, significantly limiting CSX's trains' ability to enter into the major Queensgate Rail Yard." (Doc. 1-4 at ¶ 19). Damage to the Signal Cable could further "allow a train to move when it is not safe to do so." (*Id.*)

While Defendant bears the burden to evidence the right to preemption, Defendant has presented sufficient evidence and case law at this stage that the Court cannot conclude that Plaintiff is substantially likely to succeed on the merits. Before the Court

---

[3] Part of Defendant's evidence on this point is the following statement in the declaration of Michael Myers: "An individual claiming to work for the Plaintiff later informed me that a tractor trailer exiting the Property across the paved surface on CSXT Right of Way had struck and damaged the Signal Cable." (Doc. 1-4 at ¶ 10). Plaintiff argues this statement is inadmissible hearsay. (Doc. 10 at 11). This argument fails-at this stage, the Court "may rely on affidavits and hearsay materials which would not be admissible evidence for a permanent injunction, if the evidence is appropriate given the character and objectives of the injunctive proceeding." *FTC Nat'l Testing Servs., LLC*, No. 3:05-0613, 2005 U.S. Dist. LEXIS 46485, at *5 (M.D. Tenn. Aug. 8, 2005); *see also Houdini Inc. v. Goody Baskets LLC*, 166 F. App'x 946, 947 (9th Cir. 2006) (finding a district court did not abuse its discretion in considering hearsay "because the rules of evidence do not strictly apply to preliminary injunction proceedings.").

could grant Plaintiff the easement it seeks, the Court would first have to determine whether the easement would "unreasonably interfere" with Defendant's railroad operations. This will require a detailed, fact-specific analysis and the weighing of competing evidence as to, at a minimum, (1) whether tractor trailers "foul" the track while utilizing the West Sixth Street Exit, and (2) the cause of the Signal Cable's damage. The fact that the parties have submitted competing affidavits and evidence on both of these issues underscores that neither party has demonstrated a "strong likelihood" of success.

**B. Plaintiff has not demonstrated an irreparable injury.**

To demonstrate irreparable injury, Plaintiff must show it "will suffer actual and imminent harm rather than harm that is speculative or unsubstantiated." *Abney v. Amgen, Inc.*, 443 F.3d 540, 552 (6th Cir. 2006). Harm is irreparable if it cannot be fully compensated by monetary damages. *Overstreet v. Lexington-Fayette Urban County Gov't.*, 305 F.3d 566, 578 (6th Cir. 2002).

Plaintiff asserts it faces two types of irreparable harm. First, Plaintiff argues that it faces "a breakdown in efficiency and additional costs to the business[.]" (Doc. 3 at 10). This argument fails. Additional costs resulting from a temporary breakdown in efficiency, in the form of spoiled product or otherwise, can be sufficiently remedied by a monetary award and is therefore not "irreparable" harm. *See Overstreet*, 305 F.3d at 578.

Second, Plaintiff argues that some vendors have "articulated an imminent threat of cancelling their business with Plaintiff due to concerns of safety for their drivers." (Doc. 3 at 10). Plaintiff's assertion of an "imminent" threat is not supported by its own

evidence. The transportation manager of Dot Foods—the nation's largest food redistributor—stated that it "reached a workaround" to allow it to continue servicing the Chefs' Warehouse Site with 53' tractor trailers. (Doc. 11-1 at ¶ 11). Dot Foods' assertion that it is "constantly reevaluating the situation and <u>may</u> refuse service at any time if our driver is not confident in the safety of himself and his equipment"[4] is speculative and therefore insufficient to demonstrate "imminent" harm. *See Lieberman v. Husted*, 900 F. Supp. 2d 767, 781 (S.D. Ohio 2012) ("it is not enough for a party seeking injunctive relief to show a 'possibility' of irreparable harm; instead, it must be shown that irreparable injury 'is *likely* in the absence of an injunction.'") (quotation omitted).

### C. The threatened harm to Defendant, third parties and the public outweighs the harm to Plaintiff.

Plaintiff argues that a temporary restraining order is in the public interest because (1) trailers exiting on Dalton Avenue must make a difficult maneuver (Doc. 10-1 at 9), (2) first responders typically enter the Chefs' Warehouse Site through the West Sixth Street Exit (*Id.* at ¶ 8), and (3) interruption of Plaintiff's business could affect Cincinnati residents' access to food delivery (Doc. 10 at 17). The Court notes that, however undesirable the Dalton Avenue Exit may be to the Plaintiff, there is no evidence that it does not provide adequate access to and from the Chefs' Warehouse Site for tractor trailers or first responders, and Plaintiff's concerns about the interruption of its business are speculative and contradicted by its own evidence.

---

[4] (Doc. 11-1 at ¶ 14) (emphasis added).

Defendant has submitted evidence that tractor trailers have <u>already</u> damaged its Signal Cable, which is responsible for transmitting critical information concerning track occupancy, switch position and signal indication. (Doc. 1-4 at ¶¶ 11-19). Defendant has submitted evidence that further damage to the Signal Cable could cause delays to Defendant's customers throughout a rail corridor spanning Richmond, Atlanta, Nashville, Detroit, and Cincinnati, and that it may present a safety issue by allowing a train to move when it is not safe to do so. (*Id.* at ¶ 19; Doc. 1-3).

In light of the gravity of the potential harm to Defendant and its customers, and considering the general public's interest in reliable and safe transportation, the Court cannot find that the harm to Plaintiff outweighs the potential harms to third parties and the general public.

## IV. CONCLUSION

For these reasons, the Court finds that Plaintiff has not established by clear and convincing evidence its entitlement to the extraordinary remedy of a temporary restraining order. Accordingly, Plaintiff's motion for a temporary restraining order (Doc. 3) is **DENIED**.

Within 48 hours of the filing of this Order, the parties shall meet and confer and jointly submit via email to chambers (black_chambers@ohsd.uscourts.gov) a proposed expedited discovery schedule and briefing schedule to resolve Plaintiff's motion for a preliminary and/or a permanent injunction.

**IT IS SO ORDERED**.

Date: 9/5/17   /s/ *Timothy S. Black*
              Timothy S. Black
              United States District Judge