# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

| | | |
|---|---|---|
| CHEFS' WAREHOUSE MIDWEST, LLC, | : | Case No. 1:17-CV-555 |
| | : | |
| Plaintiff, | : | Judge Timothy S. Black |
| | : | |
| vs. | : | |
| | : | |
| CSX TRANSPORTATION, INC. | : | |
| Defendant. | : | |

## ORDER DENYING THE PARTIES' CROSS-MOTIONS
## FOR SUMMARY JUDGMENT (Docs. 44, 45)

This case is before the Court on the parties' cross-motions for summary judgment (Docs. 44, 45) and the parties' responsive memoranda (Docs. 47, 48, 50, 51).

## I.     INTRODUCTION

Plaintiff Chefs' Warehouse Midwest, LLC ("Chefs' Warehouse") is a food distribution operation that operates from property located at 619 Linn St., Cincinnati, Ohio ("Property").  (Doc. 2 at ¶¶ 5, 8).

Defendant CSX Transportation, Inc. ("CSX") is one of the largest railroad transportation companies in the United States.  (Doc. 45-1 at ¶ 2).  CSX is a Class I railroad providing common carrier rail services across 21,000 railroad route miles in the eastern United States and two Canadian Provinces.  (*Id.* at ¶ 3).  The CSX railroad system includes more than 4,000 railroad route miles in the State of Ohio.  (*Id.* at ¶ 4).

CSX owns property identified in the Hamilton County, Ohio, public records as Parcel Identification Number 138-5-208 (the "CSX Parcel").  (Doc. 2 at ¶ 17).

According to Chefs' Warehouse, its Property has two access points to public streets: one on the northwest end of the Property on Dalton Avenue, and the other on the southeast end of the Property just north of the stub of West 6th St. (Doc 2 at ¶ 18). Chefs' Warehouse states that the southeast vehicular access, which is utilized for egress from the Property, crosses a small but critical portion of the CSX Parcel before proceeding on a portion of right of way that is a stub to West 6th St. (*Id.* at ¶ 19). This "small but critical" portion of the CSX Parcel (the "Disputed Parcel") is the subject of this lawsuit. Chefs' Warehouse claims hundreds of vehicles per day—consisting of its employees, customers, vendors, distributors, delivery trucks, and others—have used the Disputed Parcel to exit the Property for more than 21 years. (*See* Doc. 2 at ¶¶ 23-27).

On July 14, 2017, CSX sent Chefs' Warehouse a letter claiming that Chefs' Warehouse's unauthorized use of the Disputed Parcel resulted in one of CSX's cables being knocked down. (Doc. 2 at Ex. I). CSX's letter demanded Chefs' Warehouse stop using the Disputed Parcel immediately. (*Id.*) On July 24, 2017, CSX barricaded the Disputed Parcel, preventing vehicles from exiting the Property onto West 6th St. (Doc. 44-1 at ¶ 38).

On August 23, 2017, Chefs' Warehouse commenced this lawsuit in the Hamilton County Court of Common Pleas. CSX removed the case to this Court. Chefs' Warehouse's Complaint contains two claims. Count One alleges Chefs' Warehouse has been in open, continuous, exclusive, and adverse use of the Disputed Parcel for more than 21 years and seeks an easement by prescription. (Doc. 2 at ¶¶ 54-56). Count Two

requests injunctive relief restraining CSX from interfering with Chefs' Warehouses' removal of the barricades from the Disputed Parcel. (*Id.* at ¶¶ 57-61).

## II.    STANDARD

A motion for summary judgment should be granted if the evidence submitted to the Court demonstrates that there is no genuine issue as to any material fact, and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The moving party has the burden of showing the absence of genuine disputes over facts which, under the substantive law governing the issue, might affect the outcome of the action. *Celotex*, 477 U.S. at 323. All facts and inferences must be construed in a light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

A party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248 (1986).

## III.    ANALYSIS

The Court has reviewed the parties' cross-motions and their supporting evidentiary materials and finds that neither party is entitled to judgment as a matter of law. Virtually all of the parties' proposed undisputed facts are, in fact, disputed by the other party. (*See* Docs. 44-1, 45-1, 47-1, 48-1). Upon a careful review of all filings, the Court finds there are multiple issues of material fact as to both Chefs' Warehouse's claims and CSX's defenses that will have to be decided at trial.

**A.      Issues of Fact on the Elements of Chefs' Warehouse's Claims.**

To establish an easement by prescription, the claimant must show that its use of the property has been: (1) open and notorious; (2) adverse to its neighbor's property rights; and (3) continuous, for at least twenty-one years.  *Nuskabel v. Cincinnati Pub. Sch. Emples. Credit Union*, 125 Ohio App. 3d 427, 433-32 (1997).  To prevail on a claim for a prescriptive easement, a plaintiff must prove each element of its claim by clear and convincing evidence.  *See Queen v. Hanna*, 2012-Ohio-6291, ¶ 34, 985 N.E.2d 929, 940; *Canton Asphalt Co. v. Fosnaught*, Fifth Dist. Stark App. Nos. 2011-CA-77, 2011-CA-85, 2011-Ohio-5902, ¶ 17.

The Court finds issues of material fact pertaining to the elements of Chefs' Warehouse's claims include, *inter alia*:

When Open and Adverse use of the Disputed Parcel Began.  Initially, the Court finds that there is a question of fact as to when open and adverse use of the Disputed Parcel began.  Chefs' Warehouse asserts that it, as well as its predecessors, "have been crossing over Defendant's property to use the West Sixth Street Exit for over thirty years, beginning at least since Squeri Foods occupied the Site in 1971."  (Doc. 44-1 at ¶ 13).  The only evidence Chefs' Warehouse cites in support of its contention that the 21-year clock started in 1971 is the affidavit of Patrick O'Callaghan.  (*Id.*, citing Doc. 43).  But Mr. O'Callaghan does not purport to have any personal knowledge of adverse use of the Disputed Parcel in 1971—his affidavit states that he did not begin visiting the Property until "the mid-1980s."  (Doc. 43 at ¶ 5).  (Doc. 43 at ¶ 5).  Chefs' Warehouse has not set

forth <u>any</u> evidence, much less "clear and convincing" evidence, supporting its contention that open and adverse use of the Disputed Parcel began in 1971.

<u>Whether Chefs' Warehouse's use has been continuous for 21 years</u>. Chefs' Warehouse contends that use of the Disputed Parcel has been "continuous" for well in excess of the 21-year statutory minimum. (Doc. 44-1 at ¶ 23).

CSX argues that, from May 1999 to October 1999, the Property's use temporarily changed from a <u>distribution</u> facility to a <u>storage</u> facility that merely held food product for distribution at a separate facility. (Doc. 48 at PID # 2509; Deposition of Patrick O'Callaghan ("O'Callaghan Dep."), 51:10-54:1).[1] CSX argues that Chefs' Warehouse cannot demonstrate "continuous" use because its corporate representative stated in his deposition that he did not know the numbers or types of vehicles that were using the Disputed Parcel during the eight-month time period during which the facility provided storage. (*Id.* at PID # 2509-10; O'Callaghan Dep. at 83:15-20).

The Court agrees with CSX. Under Ohio law, "a substantial change in the mode of use of a driveway interrupts the element of continuous use." *Canton Asphalt*, 2011-Ohio-5902, ¶ 22. Chefs' Warehouse's corporate representative expressly testified that he was not "able to provide any testimony" as to the numbers or types of vehicles that used the Disputed Parcel from May 1999 to October 1999. (O'Callaghan Dep. at 83:15-20). In light of this testimony, the Court cannot conclude that Chefs' Warehouse has met the "continuous" requirement of its claim for a prescriptive easement by clear and convincing

---

[1] The Deposition of Patrick O'Callaghan is filed at Doc. 32.

evidence. The scope of Chefs' Warehouse's use during this period, and whether it constituted a "substantial change in the mode of use" of the Disputed Parcel, are questions of fact for trial.

Propriety of injunctive relief. CSX argues that Chefs' Warehouse's claim for injunctive relief fails because Chefs' Warehouse cannot demonstrate an irreparable injury in light of the fact that it has been continuously open and operating without any loss of customers since this lawsuit was filed. (Doc. 45 at 32).

The Court does not agree. An injunction is typically the appropriate means to enforce an easement. *See Goldberger v. Bexley Properties*, 5 Ohio St. 3d 82, 448 N.E.2d 1380, 1383 (1983) ("This Court has consistently held that when a right of way, arising out of an agreement between adjacent landowners is interfered with, injunctive relief is the proper mode of enforcing the agreement"); *see also* Restatement of the Law of Property (Third) § 8.3 Comment (b) ("Injunctive relief is normally available to redress violations of easements and restrictive covenants without proof of irreparable injury or a showing that a judgment for damages would be inadequate."). The material issues of fact pertaining to Chefs' Warehouse's claim for an easement preclude judgment as a matter of law on its request for injunctive relief.

## B. Issues of Fact on CSX's Preemption Defense.

CSX argues further that Chefs' Warehouse's state-law claim for an easement is preempted by the Interstate Commerce Commission Termination Act ("ICCTA").

The ICCTA grants the Surface Transportation Board ("STB") exclusive jurisdiction over, *inter alia*, "transportation by rail carriers" and "the construction,

acquisition, operation, abandonment, or discontinuance of spur, industrial, team, switching, or side tracks, or facilities, even if the tracks are located, or intended to be located, entirely in one State[.]"  49 U.S.C. § 10501(b).  The remedies provided in the ICCTA in regards to the aforementioned preempt the remedies provided under federal or state law.  *Id.*  "Transportation" is defined as including, *inter alia*, all of the facilities, equipment, property, and instruments related to the movement of property by rail, regardless of ownership.  49 U.S.C. § 10102(9).

The ICCTA facially preempts two types of actions: (1) any form of state or local permitting or preclearance that, by its nature, could be used to deny a railroad the ability to conduct some part of its operations or to proceed with activities that the Board has authorized, and (2) state or local regulation of matters directly regulated by the Board. *CSX Transportation, Inc.*, Petition for Declaratory Order, Fin. Dkt. 34662, 2005 STB Lexis 675, at * 5 (May 3, 2005).

For actions that are not facially preempted, the § 10501(b) preemption analysis requires a factual assessment of whether that action would have the effect of preventing or "unreasonably interfering" with railroad transportation.  *Id.* at * 9; *Franks Inv. Co. LLC v. Union Pac. R.R. Co.*, 593 F.3d 404, 414 (5th Cir. 2010) ("state law actions can be preempted as applied if they have the effect of unreasonably burdening or interfering with rail transportation."); *City of Ozark v. Union Pac. R.R. Co.* 843 F.3d 1167, 1171 (8th Cir. 2016).  Claims for non-exclusive use of railroad property are typically analyzed under this "as applied" framework and preempted if they unreasonably impede with rail operations or pose undue safety risks.  *See Maumee & Western Railroad Corp. and RMW*

*Ventures, LLC*, Petition for Declaratory Order, Fin. Dkt. No. 34354, 2004 STB LEXIS 140, at * 5 (S.T.B. Mar. 2, 2004) ("routine, non-conflicting uses, such as non-exclusive easements for at-grade road crossings, wire crossings, sewer crossings, etc., are not preempted so long as they would not impede rail operations or pose undue safety risks.").

As explained by this Court previously, the question of whether a state law claim would "unreasonably interfere" with railroad transportation requires a fact-specific determination. *Franks Inv. Co.*, 593 F.3d at 414, n. 2. Accordingly:

> when a state or federal court determines that the railroad has made no showing that a remedy allowing use of a particular crossing would unreasonably interfere with rail transportation, then the court may proceed to resolve the crossing dispute applying relevant state law contract, property, or condemnation principles. [citation omitted]. However, if the court concludes that a proposed crossing easement would unreasonably interfere, then §10501(b) grants the STB exclusive jurisdiction and the lawsuit or condemnation proceeding must be dismissed or enjoined for lack of jurisdiction.

*City of Ozark*, 843 F.3d at 1171.

Here, Chefs' Warehouse's request for a non-exclusive easement by prescription on and over the Disputed Parcel is preempted by the ICCTA if it would "unreasonably interfere" with railroad transportation. *CSX Transportation, Inc.*, 2005 STB Lexis 675, at * 9; *Franks Inv. Co.*, 593 F.3d at 414; *City of Ozark*, 843 F.3d at 1171.

At this juncture, the Court cannot conclude from the record before it whether or not, as a matter of law, Chefs' Warehouse's requested easement would "unreasonably interfere" with railroad transportation. Almost every fact asserted by the parties in support of their competing positions are disputed. These factual disputes include, *inter*

*alia*:[2]

The Signal Cable Dispute.  CSX has a signal cable ("Signal Cable") that runs over the Disputed Parcel.  Material issues of fact exist as to whether the Signal Cable was hit by a vehicle crossing the Disputed Parcel, and, if so, the significance of the event.

CSX states that the integrity of the Signal Cable is vital to safe train operations, and that it, *inter alia*, transmits information concerning track occupancy, switch position, and signal indication to remote dispatch centers to coordinate and plan train movements. (Doc. 1-4 at ¶ 19).  CSX argues that if the Signal Cable is cut or severed, it could cause the switch to stop functioning, severely limiting CSX's trains' ability to enter into the major Queensgate Rail Yard.  (*Id.*)

CSX states that, on June 27, 2017, it discovered the Signal Cable had been hit with such force it bent the two poles holding it.  (Doc. 45 at ¶ 7; Doc. 9-3 at ¶¶ 9-10).  CSX Signal Maintainer Mike Myers claims he spoke to a Chefs' Warehouse employee who told Mr. Myers that a tractor trailer exiting Chefs' Warehouse's facility struck the Signal Cable.  (Doc. 9-3 at ¶ 10).  CSX asserts that the Signal Cable was struck twice more in July 2017, and argues that an email from Chefs' Warehouse's director of operations demonstrates culpability for both additional incidents.  (Doc. 45 at ¶¶ 8-9).

---

[2] Chefs' Warehouse also argues that the ICCTA does not apply because the statute became effective in 1996, and Chefs' Warehouse's easement had already vested by that time.  (Doc. 47 at PID # 2437-38).  Assuming without deciding Chefs' Warehouse's argument that the ICCTA does not apply retroactively, the Court cannot resolve this argument on the record before it because there is an issue of fact as to whether open and adverse use of the Disputed Parcel began 21 years prior to 1996.  (*See* Section III(A), *supra*).

CSX argues the fact that trucks using the Disputed Parcel have already struck the Signal Cable on multiple occasions demonstrates that use of the parcel is not safe and "unreasonably interferes" with railroad transportation. (Doc. 45 at PID # 2361-62).

Chefs' Warehouse responds that the Signal Cable was not initially damaged by a vehicle, but by a storm that caused the Signal Cable to "droop" lower than it was previously hanging. (Doc. 44-1 at ¶¶ 29-31). Chefs' Warehouse contends none of its employees, agents, customers, distributors, suppliers, or vendors had anything to do with the damage to the Signal Cable. (*Id.* at ¶ 34). Chefs' Warehouse argues the largest trucks using the West Sixth Street Exit have a height of 13 feet and six inches, and CSX is capable of hanging the Signal Cable safely above that height. (*Id.* at ¶ 35).

"Fouling" the track. CSX argues Chefs' Warehouse's use of the Disputed Parcel constitutes a safety risk because it will result in "fouling" the track. (Doc. 45 at PID # 2362). "Fouling a track" means "the placement of an individual or an item of equipment in such proximity to a track that the individual or equipment could be struck by a moving train or on-track equipment, or in any case is within four feet of the field side of the near running rail." 49 C.F.R. § 214.7. Federal regulations prohibit railroad workers from fouling a track "except when necessary for the performance of a duty." 49 C.F.R. § 214.313(b). CSX submitted a report from its expert witness, Mark Dennis, that states trucks cannot consistently pass through the Disputed Parcel without fouling the track. (Doc. 42-1).

Chefs' Warehouse's expert, John Pflum, states that trucks can navigate the Disputed Parcel without fouling the track. (Doc. 10-2). Chefs' Warehouse argues further

that, in any event, whether or not the track is "fouled" is ultimately irrelevant because the applicable federal regulation only prohibits railroad workers—not third-party truck drivers—from fouling the track, and because a course of action is not *per se* unsafe just because it results in a "foul."  (Doc. 44-2 at PID # 2330-2333).

CSX's future plans.  CSX argues Chefs' Warehouse's requested easement would unreasonably interfere with CSX's ability to install new equipment or infrastructure. (Doc. 45 at PID 2364-65; Doc. 45-4 at ¶ 10).  CSX argues it has evaluated the possibility of relocating a wayside signal in the vicinity of the Disputed Parcel to improve the visibility to train crews while navigating the curve entering into Queensgate Rail Yard. (*Id.*)  However, CSX argues it could not install the signal if Chefs' Warehouse is granted the easement it seeks here.  (*Id.*)

Chefs' Warehouse responds that CSX's argument about its future plans is pretext and unsupported by documentary evidence.  (Doc. 47).

Given these disputed material facts, the Court cannot determine at this juncture whether or not Chefs' Warehouse's requested easement would "unreasonably interfere" with railroad transportation as a matter of law.  At trial, the parties will need to evidence their competing interpretations as to the cause of the Signal Cable's damage, whether vehicles passing through the Disputed Parcel must "foul" the track, and the extent the easement will interfere with CSX's future plans.  The weight to be attributed to the answers to these questions must be based on the evidence presented at trial.

## IV.    CONCLUSION

For the foregoing reasons, Chefs' Warehouse's motion for summary judgment

(Doc. 44) is **DENIED** and CSX's motion for summary judgment (Doc. 45) is **DENIED**.

**IT IS SO ORDERED.**

Date:            1/28/19

Timothy S. Black
United States District Judge